IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| BRIDGING COMMUNITIES, INC. and GAMBLE PLUMBING & HEATING, INC., individually and as the representatives of a class of similarly situated persons, ) ) ) ) ) ) | No. 09-CV-14971 |
| Plaintiffs, ) ) | |
| v. ) ) | |
| TOP FLITE FINANCIAL, INC. ) ) | |
| Defendant. ) | |

**AGREED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT AND NOTICE TO THE CLASS**

Plaintiffs, Bridging Communities, Inc. and Gamble Plumbing & Heating Inc. ("Plaintiffs"), on behalf of themselves and a proposed settlement class of similarly-situated persons (identified herein as the "Settlement Class"), respectfully request, pursuant to Fed. R. Civ. P. 23 (e), that the Court enter an order (1) preliminarily approving the parties' proposed class action Settlement Agreement (the "Agreement") attached to Plaintiffs' supporting brief as Exhibit A, (2) approving the form of Class Notice attached as Exhibit 1 to the Agreement and its dissemination to the Settlement Class by fax and by mail to class members who cannot be reached by fax, and (3) setting dates for opt-outs, objections, and a fairness hearing to take place no sooner than 90 days after the government officials receive the notice CAFA requires (to be served by defense counsel no later than 10 days after this motion, which attaches the Agreement, is filed with the Court).

1

A proposed Preliminary Approval Order is attached as Exhibit 2 to the Agreement and will be submitted to the Court electronically. This motion is unopposed.

Plaintiffs have filed a brief in support of this motion.

Bridging Communities, Inc. and
Gamble Plumbing & Heating Inc., on
behalf of themselves and the class

By: /s/ David M. Oppenheim
One of their attorneys

| | |
|---|---|
| Jason Thompson | Phillip A. Bock |
| SOMMERS SCHWARTZ, P.C. | Tod A. Lewis |
| One Towne Square, Suite 1700 | David M. Oppenheim |
| Southfield. MI 48076 | BOCK, HATCH, LEWIS & |
| Telephone: (248) 415-3206 | OPPENHEIM LLC |
| Facsimile: (248) 746-4001 | 134 N. La Salle Street, Suite 1000 |
| | Chicago, IL 60602 |
| | Telephone: 312/658-5500 |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

BRIDGING COMMUNITIES, INC.  )
and GAMBLE PLUMBING &   )
HEATING, INC., individually and as )
the representatives of a class of  )
similarly situated persons,   )
              ) No. 09-CV-14971
     Plaintiffs,   )
              )
    v.       )
              )
TOP FLITE FINANCIAL, INC.  )
              )
     Defendant.   )

## BRIEF IN SUPPORT OF AGREED MOTION
## FOR PRELIMINARY APPROVAL OF
## CLASS ACTION SETTLEMENT AND NOTICE TO THE CLASS

Plaintiffs, Bridging Communities, Inc. and Gamble Plumbing & Heating, Inc. ("Plaintiffs"), on behalf of themselves and a proposed settlement class of similarly-situated persons (identified herein as the "Settlement Class"), respectfully request that the Court preliminarily approve the proposed class action settlement (Exhibit A) and, in support thereof, states as follows:

## STATEMENT OF THE ISSUES

Whether the settlement embodied in the Settlement Agreement is "fair, reasonable and adequate" for the absent class members.

Whether the contents of the Class Notice agreed upon by the Parties are clear and concise, and meet the requirements of Rule 23 (c) (3).

Whether the agreed upon method for sending the Class Notice is reasonable, as required by under Rule 23 (e) (1).

1

## CONTROLLING AUTHORITY

- Federal Rule of Civil Procedure 23;

- *Int'l Union, United Auto, Aerospace and Implement Workers of America v. General Motors Corp.,* 497 F.3d 615, 631 (6th Cir. 2007);

- *Ramey v. Cincinnati Enquirer, Inc.,* 508 F.2d 1188, 1196 (6th Cir. 1974);

## I.   Background of the litigation.

Plaintiffs' Complaint alleges that Defendant sent unsolicited advertisements by facsimile to Plaintiffs and others in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"). The action seeks statutory damages. Based upon discovery and computer analysis of fax transmission records, Plaintiffs determined that Defendant's advertisements were successfully sent by fax to 4,271 unique fax numbers: 3,757 on March 20, 2006, and an additional 514 on March 30, 2006.

Although "blast fax" class actions might superficially appear to be relatively simple—*i.e.,* the issue of whether a defendant sent unsolicited advertisements by fax may not seem complex—TCPA class action jurisprudence generally, and the issues in this case specifically, reveal "simple" to be an unfair characterization.  Absent settlement, this case does not necessarily result in a judgment for the class, trebled damages, or collection from Defendant or its insurer.[1]  A fair, reasonable, and

---

[1]    B2B-related TCPA class actions have created their own subset of TCPA jurisprudence, reflecting both the complexity and risk involved in these cases. *See, e.g., Siding and Insulation Co. v. Alco Vending, Inc.*, 822 F.3d 886 (6th Cir. 2016) (reversing summary judgment for defendant but noting B2B's representation of recipients' consent could be defense to liability); *Bridging Communities Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119 (6th Cir. 2016) (reversing denial of class certification where consent defense was speculative); *Imhoff Inv., LLC v. Alfoccino, Inc.*, 792 F.3d 627 (6th Cir. 2015) (party that hired B2B was sender of faxes); *Am. Copper & Brass, Inc. v. Lake City Indus. Products, Inc.*, 757 F.3d 540 (6th Cir. 2014) (affirming class certification and summary judgment for class in B2B case); *Paldo Design and Display Co. v. Wagener Equities Inc.*, 825 F.3d 793 (7th Cir. 2016) (affirming decision after trial that defendant was not "sender" because it did not authorize faxes sent by B2B); *Bridgeview Health Care Ctr., Ltd. v. Clark*, 816 F.3d 935 (7th Cir. 2016) (sender liability imports agency principles and B2B, in violating defendant's instructions, was not defendant's agent); *Palm Beach Center-Boca, Inc. v. Sarris D.D.S., P.A.,* 781 F.3d

adequate settlement avoids risk and delay. *See, e.g., Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 834 (E.D. Mich. 2008) ("class members would bear the risk that continued litigation will leave them with nothing because of loss and, in some cases, also because of delay").

This case has been hard fought and required skilled and specialized lawyering. During the litigation, this Court and the parties have tackled complex issues within the context of the TCPA and Rule 23, some of which had not fully been developed in appellate law until this and related cases made their way through the Sixth Circuit Court of Appeals, with other issues remaining unresolved to this day. Only after numerous years and many key decisions by the United States Supreme Court, the Sixth Circuit, and this Court, was this case finally settled.

As an early example, Plaintiff Bridging Communities, Inc. ("Bridging") filed the action on December 22, 2009. Doc. 1.[2] Defendant moved to dismiss for lack of subject matter jurisdiction. Doc. 5. Following briefing, on May 3, 2010, the Court granted the motion, holding that there was no federal question jurisdiction for TCPA

---

1245 (11th Cir. 2015) (reversing summary judgment for defendant who hired B2B); *CE Design, Ltd. v. Cy's Crab House North, Inc.*, 731 F.3d 725 (7th Cir. 2013) (insurer's attempt to intervene in B2B-related class action); *CE Design Ltd. v. C & T Pizza, Inc.*, 2015 IL App. (1st) 131465, at *158, 32 N.E.2d 150 (Ill. App. 2015) (affirming class certification in B2B-related case); *Uesco Indus., Inc. v. Poolman of Wisconsin, Inc.*, 993 N.E.2d 97 (Ill. App. 2013) (reversing class certification because defendant sought to limit types of businesses to which B2B sent fax ads); *Loncarevic and Assocs., Inc. v. Stanley Foam Corp.*, 72 N.E.3d 798 (Ill. App. 2017) (affirming class certification and summary judgment because person who placed order with B2B had authorization to do so).

[2] Plaintiff Gamble Plumbing & Heating, Inc.'s ("Gamble") separate action against Defendant was consolidated with this case. Doc. 63.

claims. Docs. 13 and 14. Bridging appealed, and the dismissal was reversed on November 17, 2011. Doc. 18.

Following discovery, Plaintiffs moved for class certification (Doc. 47) and Defendant moved for dismissal pursuant to Rule 12(b)(1) and 12(b)(6), making arguments related to Michigan state law governing faxing and class actions and the statute of limitations. Doc. 37. Both motions were fully briefed. On January 17, 2013, the Court denied Defendant's summary judgment motion. Doc. 61. On June 3, 2013, the Court denied the class certification motion. Doc. 65.

Defendant then made an individual offer of judgment to each plaintiff and moved to dismiss the case as moot. Doc. 70. Plaintiffs opposed the motion. Docs. 73 and 75. While the motion to dismiss was pending, Defendant also filed a motion for summary judgment arguing that it was not a sender of the faxes under the TCPA. Doc. 77. Plaintiffs likewise filed a brief in opposition to the summary judgment motion. Docs. 79 and 82.

On April 28, 2015, the Court granted the motion to dismiss the case as moot and entered judgment. Docs. 91-93. It did not address the motion for summary judgment. Plaintiffs appealed the dismissal and the order denying class certification. On December 15, 2016, the Sixth Circuit reversed those orders and remanded the case. Doc. 102. Defendant then again moved for summary judgment, arguing that it is not a "sender." There is risk that Defendant could be successful raising that defense. *See, e.g., Imhoff Inv., L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627 (6th Cir. 2015) (reversing summary judgment for defendant); *Siding & Insulation Co. v. Alco*

*Vending, Inc.*, 822 F.3d 886 (6th Cir. 2016) (same); *Health One Medical Center, Eastpointe P.L.L.C. v. Mohawk, Inc.*, 889 F.3d 800 (2018) (affirming dismissal); and *Compressor Engineering Corp. v. Manufacturers Financial Corp.*, No. 17-2228, -- Fed.Appx. --, 2018 WL 3949138 (Aug. 16, 2018) (reversing summary judgment for defendant).

Defendant has policies with Hartford Casualty Insurance Company (the "Insurer"). The Insurer issued annual renewal insurance policies relevant to the claims in this action. Because the policies renewed annually on March 29, the March 20, 2006 faxes are covered by the 2005-06 policy and the March 30, 2006 faxes are covered by the 2006-07 policy. The Insurer inserted a TCPA exclusion for the first time into the 2006-07 policy. Apparently looking only at that policy, the Insurer rejected the tender of defense and disclaimed coverage entirely. The March 20, 2006 faxes are, in fact covered by the 2005-06 policy. *See Auto-Owners Ins. Co. v. Tax Connection Worldwide, LLC*, Case No. 306860, 2012 WL 6049631 (Mich. App. Dec. 4, 2012), *appeal denied*, 494 Mich. 864, 831 N.W.2d 454 (2013); *Erie Ins. Exchange v. Lake City Industrial Products, Inc.*, Case No. 302889, 2012 WL 1758706 (Mich. App. May 12, 2012). As discussed further below, Defendant has agreed to create a settlement fund to compensate the recipients of the March 30, 2006 faxes, and Plaintiffs have agreed to seek payment for the March 20, 2006 faxes from the Insurer.

The Parties have negotiated a formal, written settlement agreement, drafted proposed court orders, and drafted a proposed notice to the absent class members; and now they submit their Agreement to the Court.

II.     **Summary of the settlement.**

If finally approved by the Court after notice to the Settlement Class, the parties' settlement agreement would resolve this action and the controversy about Defendant's advertisements sent by fax in March 2006 (the "Class Period"). Plaintiffs and Defendant negotiated the settlement after reviewing and analyzing the legal and factual issues presented by this action, the risks and expenses involved in pursuing the lawsuit to conclusion, the likelihood of additional litigation here and in an insurance coverage action, and the likelihood, costs, and possible outcomes of one or more procedural and substantive appeals. They also reviewed and analyzed the legal and factual issues surrounding the questions and extent of Defendant's insurance coverage. Based upon their review and analysis, Plaintiffs and Defendant agreed to and executed the Agreement.

The Agreement's key terms are as follows:

a.      <u>Certification of a Settlement Class</u>. The Parties have stipulated to certification of a Rule 23 (b) (3) "Settlement Class" defined as: "All persons who owned or used a fax number to which a facsimile transmission was successfully sent in March 2006 referencing 'Top Flite Financial' and offering '0 Down, 0 Closing Costs' for 'Mortgages' on 'Purchases / ReFinancing,' and identifying (718) 360-0971 as a 'Remove Hotline' telephone number." Excluded from the Settlement Class are Top Flite Financial, Inc., any of its parents, subsidiaries, affiliates or controlled persons, and its officers, directors,

partners, members, agents, servants, and employees of any kind, and the members of their immediate families. *See* Agreement, <u>Exhibit A</u>, at ¶ 3.

  b.    <u>The Class Representative and Class Counsel</u>. The parties have agreed that Plaintiffs shall be the Class Representatives and that Plaintiffs' attorneys (Phillip A. Bock of Bock, Hatch, Lewis & Oppenheim LLC, Jason J. Thompson of Sommers Schwartz, P.C., and Brian J. Wanca of Anderson + Wanca) shall be Class Counsel for the Settlement Class. *Id.* at ¶ 4.

  c.    <u>Judgment</u>. Defendant agrees to allow Judgment to be entered against it in the total amount of $2,135,500, calculated as $500.00 for each of the 4,271 successful fax transmissions identified in the Report of Robert Biggerstaff, in favor of the Settlement Class (represented by Plaintiffs and their attorneys), allocated as follows: (1) $1,878,500 for the 3,757 faxes successfully sent on March 20, 2006, and (2) $257,000.00 for the 514 faxes successfully sent on March 30, 2006 (the "Judgment"). *Id.*, ¶ 7.

  d.    <u>Settlement Fund and Partial Satisfaction of Judgment</u>. Defendant will make available a settlement fund of $257,000.00 (the "Settlement Fund"), to satisfy the portion of the Judgment Amount attributable to the March 30, 2006 faxes only. The Settlement Fund shall pay Class members (including Bridging, who received a March 30 fax[3]) who timely submit a Proof of Claim form pertaining to March 30, 2006 faxes, only, the lesser of $500.00 or his or her *pro rata* share of the Settlement Fund; a *cy pres*

---

[3] Gamble received a fax on March 20 and will recover for it from Hartford.

award if necessary; an incentive payment to the class representatives; attorney's fees; and expenses not to exceed $38,333.33 incurred to the date of final approval of the Settlement Agreement to Class Counsel. Defendant is entitled to keep all unclaimed funds in the Settlement Fund above the *cy pres* floor described below. *Id.*, ¶ 9.

     e.    <u>Claims</u>.

          (i)    <u>Claim Form</u>. A person must identify himself/herself/itself as the owner/holder of one or more of the involved fax numbers on March 30, 2006 to claim relief from the Settlement Fund. The class notice includes a simple, one-page claim form for submitting such claims for payment. The claim form is the fourth page of the Notice (Exhibit 2 to the Settlement Agreement). On the claim form a person must affirm that a fax number identified in Defendant's fax broadcaster's records as having been sent one or more advertisements was that person's fax number on March 30, 2006. A person submitting a timely and valid non-duplicative Claim Form will be mailed a payment of the lesser of $500.00 per fax that was sent to that fax number (per the records produced in the Litigation) or a *pro rata* share of the Settlement Fund after the other required payments are subtracted. The claimant need not possess any copy of the fax at issue, need not remember receiving the fax at issue, and need not know anything about Defendant. Rather, the claimant must merely identify himself/herself/itself as a member of the

Settlement Class by verifying ownership of one or more targeted fax numbers on March 30, 2006. *Id.*, ¶¶ 5, 9 and Exhibit 2 thereto.

(ii)    <u>Settlement Administrator</u>. Subject to the Court's approval, a company named Class-Settlement.com will be the "Settlement Administrator," and will issue the class notice, maintain the settlement website, assist class members in completing and submitting forms, receive the claim forms, and provide a list of approved and rejected claims to counsel for the parties. For purposes of this paragraph, multiple claims based upon the same fax number are considered duplicative claims.  If multiple claim forms are submitted for a fax number listed on Claim form, the Settlement Administrator shall pay the first claim received for the fax number and reject all additional claims as duplicative claims. The Settlement Administrator will provide copies of all approved claim forms to counsel for the parties. The parties have agreed to work in good faith to resolve any objection any particular claim (*e.g.*, late submissions, insufficient information, and indicia of fraud), but have agreed that the decision of the Settlement Administrator regarding the validity/approval of claims shall be final and binding. *Id.*, ¶ 6.

f.    <u>*Cy Pres*</u>. With regard to the Settlement Fund applicable to the March 30, 2006 faxes, if the payments to Claimants (persons who timely submit a Proof of Claim form deemed acceptable by the Settlement

10

Administrator) total less than 15 percent of the Settlement Fund ($38,550.00),
then that difference (between the total payments to Claimants) (persons who
timely submit a Proof of Claim form deemed acceptable by the Settlement
Administrator) and 15 percent of the Settlement Fund ($38,550.00) shall be
paid as a *cy pres* award to charities recommended by Defendant and approved
by the Court.

With regard to the balance of the Judgment, any amount recovered from
the Insurer pursuant to the Judgment remaining after payment of all costs of
class notice and claims administration, any incentive payments to Plaintiffs,
the attorneys' fees and expenses to Plaintiffs' attorneys, and the amounts paid
to the Settlement Class members, shall be paid to charities recommended by
Plaintiffs and approved by the Court or the court overseeing the action against
Hartford

g.     Assignment and Covenant Not to Execute. Plaintiffs shall seek
recovery for the balance of the Judgment attributable to the March 20, 2006
faxes from the Insurer. Defendant assigns all of its rights under its Hartford
policies to Plaintiffs and the Class for the purpose of collecting and satisfying
the portion of the Judgment attributable to the March 20, 2006 faxes. *Id.*, ¶ 10.
Plaintiffs covenant to execute on that portion of the Judgment only against the
Insurer. *Id.*, ¶ 11. It is a condition precedent for the validity and enforceability
of this Agreement that the Court find and hold in the Final Approval Order
that:

11

(a)      Plaintiffs alleged that the faxes at issue violated the TCPA because they were sent without the prior express invitation or permission of the recipients;

(b)      Extensive discovery and significant litigation and appeals have been incurred by the parties over the faxes;

(c)      The settlement was made by Defendant in reasonable anticipation of potential liability that would arise from a finding that Defendant sent thousands of fax advertisements that violated the TCPA;

(d)      The settlement amount is fair and reasonable because it is within the range of statutory liquidated damages that could be awarded against Defendant for the claims made by Plaintiffs and the Class;

(e)      The settlement was entered into in good faith following arm's-length negotiations;

(f)      5,971 facsimiles referencing 'Top Flite Financial' and offering '0 Down, 0 Closing Costs' for 'Mortgages' on 'Purchases / ReFinancing,' and identifying (718) 360-0971 as a 'Remove Hotline' telephone number were sent on March 20, 2006, of which 3,757 were successfully sent;

(g)      2,212 facsimiles referencing 'Top Flite Financial' and offering '0 Down, 0 Closing Costs' for 'Mortgages' on 'Purchases / ReFinancing,' and identifying (718) 360-0971 as a 'Remove Hotline' telephone number were sent on March 20, 2006, of which 514 were successfully sent;

(h)      Defendant had no intent to injure anyone in this case including the recipients of the fax advertisements sent on March 20, 2006 and March 30, 2006; and

(i)      Defendant's decision to settle is prudent, taking into account the totality of circumstances.

Defendant will execute and provide a declaration in support of these findings to be tendered to the Court in support of final approval. *Id.,* ¶ 16.

     h.      <u>Monetary Relief to the Members of the Settlement Class</u>. The Settlement Fund shall constitute full satisfaction of the portion of the

Judgment allocated to the March 30, 2006 faxes. Defendant will pay timely non-duplicative claims pertaining to the March 30, 2006 faxes—but not the March 20, 2006 faxes—submitted by members of the Settlement Class from the Settlement Fund. Each claimant approved by the Settlement Administrator will be paid either $500.00 or the person's pro rata share of the Settlement Fund, whichever is less.

Regarding the portion of the Judgment allocated to the March 20, 2006 faxes, Plaintiffs and the Settlement Class will seek to satisfy or recover on that portion of the Judgment only from the insurance policies issued by the Insurer. Plaintiffs, the Settlement Class, and their counsel, will pursue an action and attempt to recover the Judgment against Defendant's insurance policies and the Insurer. Each Settlement Class member who was successfully sent a facsimile on March 20, 2006, and who does not opt out or exclude himself from the Settlement, will be sent a pro rata share of the amount recovered by judgment or settlement from the Insurer, only, less attorneys' fees of one-third plus litigation expenses for Plaintiffs' attorneys, and any additional incentive award to each of the Plaintiffs for representing the Settlement Class. This amount is subject to further litigation and compromise with the Insurer and review by the Court or the court handling the litigation against the Insurer. *Id.*, ¶ 12.

i. <u>Prospective Relief</u>. Defendant agrees that it will not send advertisements by facsimile unless it has first obtained the prior express

invitation permission of the intended recipient or it has an established business relationship with the recipient and includes the required opt out notice. *Id.*, ¶ 8.

j.     Class Notice. The parties have agreed to notify the Settlement Class about the settlement by sending the notice to the fax numbers originally targeted with Defendant's fax transmissions, then by U.S. Mail to the addresses associated with the fax numbers that don't accept the class notice after three attempts, and by publishing the notice and claim form on the Settlement Administrator's website. The notice includes instructions about opting out, objecting, or submitting a claim form by fax or mail or electronically to the Settlement Administrator and includes Class Counsel's direct dial telephone numbers for people to call with questions. *Id.*, ¶ 5 and Exhibit 2 thereto.

k.     Partial Release. The Settlement Class will release all claims that were brought or which could have been brought in this action against Defendant and the other released parties about Defendant's advertisements sent by fax on March 30, 2006, but not those pertaining to the facsimiles sent on March 20, 2006. *Id.*, ¶ 19.

l.     Attorney's Fees and Costs and Class Representative Award. At the final approval hearing, as indicated in the class notice, Class Counsel will apply to the Court to approve an award of attorney's fees equal to one-third of the Settlement Fund ($85,666.67), plus reasonable out-of-pocket expenses not

to exceed $38,333.33, incurred to the date of final approval of the Settlement Agreement to Class Counsel. In addition, Class Counsel shall receive one third of any future recovery from the Insurer plus future expenses incurred following final approval. Class Counsel will also ask the Court to approve awards of $7,500 for Bridging Communities and $5,000 for Gamble Plumbing & Heating from the Settlement Fund for serving as the Class Representatives. Should there be a recovery from Hartford, Plaintiffs may seek an additional incentive award from this Court or the court hearing the action against Hartford. *Id.*, ¶¶ 14, 15.

## III.  The Court should preliminarily approve the settlement.

### A.  The proposed settlement is within the range of possible approval.

A district court's review of a proposed class action settlement is typically a two-step process. The first step is to hold a preliminary fairness hearing prior to notifying the class members about the proposed settlement. *Tennessee Ass'n Health Mntce. Orgs. v. Grier,* 262 F.3d 559, 565-66 (6th Cir. 1983). The purpose of that preliminary hearing is to determine whether the proposed settlement is "within range of possible approval." *In re General Motors Corporation Engine Interchange Litigation*, 594 F. 2d 1006, 1124 (7th Cir. 1979). The second step is to hold a final approval hearing after notice to the absent class members, at which time the Court can consider any objections lodged by class members or a government official pursuant to CAFA, before deciding whether to approve the settlement and enter judgment.

The Sixth Circuit has held that the appropriate preliminary approval determination is "whether the compromise embodied in the decree is illegal or tainted

with collusion." *Tenn. Ass'n Health Mntce. Orgs*, 262 F.3d at 565. That the standard for preliminary approval is less stringent than that for final approval allows the class members to be heard on the merits of a settlement.

### B.    Standard for judicial evaluation and approval.

A court may approve a class action settlement if the settlement "is fair, reasonable, and adequate." Fed. R. Civ. P. 23 (e) (1) (C); *Int'l Union, United Auto, Aerospace and Implement Workers of America v. General Motors Corp.,* 497 F.3d 615, 631 (6th Cir. 2007). It is well-established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions. *See Int'l Union,* 477 F.3d at 632 (noting "the federal policy favoring settlement of class actions"). If the court finds that the settlement falls "within the range of possible approval," the court should grant preliminary approval and authorize the parties to notify the class members about the settlement. *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982).

### C.    Factors considered in determining whether a settlement is fair, reasonable, and adequate.

In *finally* determining whether the settlement is fair, reasonable, and adequate, the trial court will consider the following factors: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and the class representatives; (6) the reaction of absent class members; and (7) the public interest." *Brent v. Midland Funding, LLC,* 2011 WL 3862363 at *12 (N. D. Ohio 2011), *citing Int'l Union,* 497 F.3d at 632.

At the *preliminary* approval stage, "only certain of these factors are relevant to the fairness inquiry." *Smith v. Ajax Manethermic Corp.,* 2007 WL 3355080 at *6 (N.D. Ohio 2007). "In its preliminary assessment of the fairness of the proposed settlement, the Court must take care not to intrude upon the private settlement negotiations of the parties any more than is necessary to determine that the agreement is not the result of fraud or collusion, and that it is fair and adequate in light of the potential outcome and the costs of litigation." *Id., citing Inter-Op Hip Prosthesis Liab. Litig.,* 204 F.R.D. 330, 351 (N.D. Ohio 2001). In this case, these factors show that the proposed settlement is within the range of possible approval and, therefore, that the Court (a) should permit the parties to notify the Settlement Class and (b) should schedule a fairness hearing to determine whether to finally approve the settlement.

New Federal Rule 23 (e) (2), which went into effect December 1, 2018, requires that: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. Here, all of these factors show the settlement should be approved. These factors are satisfied here.

17

The parties' Agreement resulted from arm's-length negotiations between experienced counsel with an understanding of the strengths and weaknesses of their respective positions in this case. "[W]hen a settlement is the result of extensive negotiations by experienced counsel, the Court should presume it is fair." *In re Inter-Op,* 204 F.R.D. at 351, *citing Williams v. Vukovich*, 720 F.2d 909, 923 (6th Cir. 1983).

Class action litigation is time consuming in terms of both pretrial and trial work. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *Brent,* 2011 WL 3862363 at *16, *quoting In re Austrian and German Bank Holocaust Litig.,* 80 F. Supp. 2d 164, 174 (S. D. N. Y. 2000). This case is no exception. Defendant has denied liability and says it agreed to settle only to avoid the distraction and expense of defending protracted litigation and exposure to higher liability. There are risks attendant to further litigation in this matter, and substantial delay and expense.

The decision to settle is reasonable considering the risks of continued litigation. This was a hard-fought case that has already involved two appeals, with clear indication that the remaining litigation would remain contentious. Then, the parties would likely litigate one or more appeals after the litigation in the district court level concluded. In addition to the risk of losing, continued litigation would delay the class members' receipt of any recovery.

The TCPA gives private citizens a right to sue to (i) enjoin future transmissions, (ii) recover the greater of actual monetary damages or $500 in damages for each junk fax, or (iii) obtain an injunction plus damages. If a court finds

that the sender willfully or knowingly violated the TCPA, it may increase the award up to three times the amount of damages. Here, each class member who was successfully sent one of the March 30, 2006 faxes, does not opt-out of this proposed settlement and who submits a timely and valid claim form will be mailed a check for $500.00 per fax Defendant sent their fax number(s), subject to possible reduction, and each class member who was successfully sent one of the March 20, 2006 faxes and does not opt out of the settlement, will be sent their pro rata share of the recovery from the Insurer.

The insurance policy applicable to those faxes has already been held by the Michigan courts of appeals to provide coverage. *See Auto-Owners*, 2012 WL 6049631; *Erie Ins. Exchange*, 2012 WL 1758706. Defendant has limited resources to pay a settlement or judgment outside its insurance policies. It is equitable to apply those resources to the claims of class members falling in the policy that excludes coverage and to pursue Hartford for recovery for the claims under the policy that provides coverage.

Plaintiffs' attorneys believe this settlement is fair, reasonable, and adequate. Plaintiffs' attorneys have litigated TCPA class actions since 2003. The Court appointed them class counsel in this case, and other courts have appointed them class counsel in TCPA cases, as well as in other types of class actions. *See, e.g., American Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, Case No. 09-cv-1162 (W.D. Mich.), *affirmed by* 757 F.3d 540 (6th Cir. 2014); *Avio, Inc. v. Alfoccino, Inc.*, Case No. 10-CV-10221 (E.D. Mich.); *APB Associates, Inc. v. Bronco's Saloon, Inc., et al.*, Case

19

No. 09-CV-14959 (E.D. Mich.); *Compressors Engineering Corp. v. Manufacturers Financial Corp. et al.*, Case No. 09-CV-14444 (E.D. Mich.); *Jackson's Five Star Catering, Inc. v. Beason*, Case No. 10-CV-10010 (E.D. Mich.); *Compressors Engineering Corp. v. Thomas*, Case No. 10-CV-10059 (E.D. Mich.); *Imhoff Investments, LLC v. Sammichaels, Inc.* Case No. 10-CV-10996 (E.D. Mich.); *Van Sweden v. 101 VT, Inc.*, Case No. 10-CV-253 (W.D. Mich). *See also Hawk Valley v. Taylor*, Case No. 10-CV-804 (E.D. Pa.); *Hinman v. M&M Rental, Inc.*, Case No. 06-CV-1156 (N.D. Ill.); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, 08-CV-5953 (N.D. Ill.). Additionally, Plaintiffs' counsel have successfully negotiated numerous class-wide settlements in TCPA cases.

Based upon the foregoing, and the judgment of experienced class counsel, Plaintiffs request that the Court preliminarily approve the settlement.

## IV.  At final approval, Class Counsel will ask the Court to approve Defendant's agreement to pay Class Counsel's fees and expenses, and an award to Plaintiffs, pursuant to the Agreement.

At final approval, Class Counsel will request that the Court approve Defendant's agreement to pay them attorneys' fees equal to one-third of the Settlement Fund plus one third of any future recovery from the Insurer. It is well recognized that the attorneys' contingent risk is an important factor in determining the fee award. *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974); *Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 565 (7th Cir. 1994). The attorneys who create a benefit for the class members are entitled to compensation for their services. *Brent*, 2011 WL 3862363 at *19.

Here, Class Counsel's request for one-third of the settlement fund and future recovery is within the market rate for TCPA cases. *See, e.g., Avio Inc. v. Creative Office Solutions, Inc.*, 10-cv-10622 (E.D. Mich. Dec. 10, 2012) (Roberts, J.) (Doc. 31) (awarding one third of fund); *Imhoff Investment, LLC v. Sammichaels, Inc.*, Case No. 10-cv-10996 (E.D. Mich. Nov. 2, 2016) (Battani, J.) (Doc. 120) (same); *Jackson's Five Star Catering, Inc. v. Beason*, Case No. 10-CV-10010 (E.D. Mich. Apr. 15, 2015) (Tarnow, J.) (Doc. 90) (same); *American Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, Case No. 09-cv-1162 (W.D. Mich. Mar. 1, 2016) (Doc. 278) (same); *Van Sweden, Inc. v. 101 VT, Inc.*, Case No. 10-cv-253 (W.D. Mich. July 30, 2015) (Doc. 245) (same); *Sandusky Wellness Center, LLC v. Wagner Wellness, Inc.*, Case No. 12-cv-2257 (N.D. Ohio Feb. 9, 2016) (Doc. 73) (same); *Hawk Valley, Inc. v. Taylor*, Case No. 10-cv-804 (E.D. Pa. Aug. 6, 2015) (Doc. 193) (same); *Sandusky Wellness Center, LLC v. Heel, Inc.*, 12-cv-1470 (N.D. Ohio Apr. 25, 2014) (Doc. 95) (same); *The Savanna Group, Inc. v. Trynex, Inc.*, Case No. 10-CV-7995 (N.D. Ill. Mar. 4, 2014) (Doc. 243) (same); *Sawyer v. Atlas Heating and Sheet Metal Works, Inc.*, Case No. 10-cv-331 (E.D. Wis. July 19, 2013) (Doc. 59) (35% of fund); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, 08 C 5953 (N.D. Ill. Nov. 1, 2010) (Doc. 146) (same); *Saf-T-Gard International, Inc. v. Seiko Corp. of America*, No. 09 C 0776 (N.D. Ill. Jan. 14, 2011) (Doc. 100) (same).

Class Counsel undertook this case on a contingency basis and achieved an excellent result in a fair and efficient manner. Obviously, the purpose of a class action lawsuit is to provide a benefit to class members, not to litigate for the sake of

litigating. Class Counsel delivered significant benefits to the Settlement Class in the face of numerous potentially fatal obstacles. Tested by the potential infirmities of the case itself, there is little doubt that Class Counsel undertook a significant risk here and the fee award should reflect that risk. Class Counsel faced a significant risk of nonpayment, not only for their time but also for their out-of-pocket costs.

The Class Notice informs the Settlement Class about the agreed and requested attorneys' fees and expenses, so that if any class member wishes to object he/she/it can do so. If the Court finds that the settlement is fair, reasonable, and adequate, then Class Counsel will ask the Court to approve the payment of fees to Class Counsel in an amount equal to one-third of the Settlement Fund, one-third of a future recovery from the Insurer, plus out of pocket litigation expenses.

At final approval, Class Counsel will also request that the Court approve Defendant's payments of $7,500 for Bridging Communities and $5,000 for Gamble Plumbing & Heating from the Settlement Fund for serving as the Class Representatives. Such awards are appropriate to reward class representatives who have pursued claims on behalf of the class. *Moulton v. U. S. Steel Corp.,* 581 F. 3d 344, 351-52 (6th Cir. 2009); *In re Continental Illinois Securities Litig.,* 962 F.2d 566, 571-72 (7th Cir. 1992). "In deciding whether such an award is warranted, relevant factors include the actions the Plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the Plaintiff expended in pursuing the litigation." *See Cook v. Niedert, et al.,* 142 F.3d 1004, 1016 (7th Cir. 1998).

Plaintiffs were catalysts for the Settlement Class's recovery. Plaintiffs filed and pursued the action. Plaintiffs responded to discovery and stayed involved and informed. Their efforts greatly benefited the Settlement Class.

Other courts have approved similar awards in TCPA cases. *See, e.g., Imhoff Investment, LLC v. Sammichaels, Inc.*, Case No. 10-cv-10996 (E.D. Mich. Nov. 2, 2016) (Doc. 120) ($15,000.00); *Sandusky Wellness Center, LLC v. Wagner Wellness, Inc.*, Case No. 12-cv-2257 (N.D. Ohio Feb. 9, 2016) (Doc. 73) (same); *Hawk Valley, Inc. v. Taylor*, Case No. 10-cv-804 (E.D. Pa. Aug. 6, 2015) (Doc. 193) (same); *Jackson's Five Star Catering, Inc. v. Beason*, Case No. 10-CV-10010 (E.D. Mich. Apr. 15, 2015) (Doc. 90) (same); *Sandusky Wellness Center, LLC v. Heel, Inc.*, 12-cv-1470 (N.D. Ohio Apr. 25, 2014) (Doc. 95) (same); *The Savanna Group, Inc. v. Trynex, Inc.*, Case No. 10-CV-7995 (N.D. Ill. Mar. 4, 2014) (Doc. 243) (same).

## V.    The Court should approve notice to the Settlement Class.

The parties propose to issue notice to the Settlement Class by facsimile, and by U.S. Mail to class members to whom facsimile notice is unsuccessful. Additionally, both the Notice and Claim Form will be available on the Settlement Administrator's website. A copy of the proposed notice is attached as Exhibit 2 to the Agreement.

Under federal law, notice of the settlement must satisfy due process. *Maher v. Zapata Corp.*, 714 F. 2d 436, 450-453 (5th Cir. 1983); *Walsh v. Great Atlantic & Pacific Tea Co.*, 726 F. 2d 956, 963 (3d Cir. 1983). The Court is vested with wide discretion both as to the way notice is given and its content. 7B Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 1797.6 (3d ed. 2005). Rule 23 (e) (i) (B) requires that notice of a settlement be provided "in a reasonable manner."

23

Here, the parties have agreed to a reasonable manner of notice by sending it to the fax numbers at issue in the case, and, where a fax notice fails, to the names and addresses Plaintiffs' expert identified with those particular fax numbers in the fax broadcaster's database. The simple, one-page claim form applicable to the March 30, 2006 fax recipients will be delivered with the notice, so that members of the Settlement Class may complete a claim form and return it immediately by fax, mail, or electronic upload to the Settlement Administrator. The notice and the claim form were written with the goals of clarity and encouraging claims by class members.

The contents of the notice "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23 (c) (3)." Here, the notice satisfies these requirements.

The notice meets the legal standards for appropriate notice and satisfies Rule 23 (e). Therefore, the Court should approve the proposed notice and authorize its dissemination to the Class.

## VI.    The Court should schedule a final fairness hearing.

Plaintiffs request that the Court schedule a hearing to determine whether the settlement should be finally approved. A proposed Final Approval of Agreement and Judgment is attached as Exhibit 3 to the Agreement.

## VII.   Conclusion.

WHEREFORE, Plaintiffs respectfully requests that the Court enter a Preliminary Approval Order in the form attached as Exhibit 1 to the Agreement, granting preliminary approval of the proposed settlement, directing that the members of the Settlement Class be notified about the proposed settlement in the form and manner agreed by the parties (Exhibit 2 to the Agreement), and setting dates for opt-outs, objections, and a final approval hearing. The final approval hearing should be on a date no sooner than 90 days after the government officials receive the notice required by CAFA.

Respectfully submitted,

Bridging Communities, Inc. and Gamble Plumbing and Heating, Inc.., on behalf of themselves and the class

By: s/ Phillip A. Bock
        One of their attorneys

Jason Thompson
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield. MI 48076
Telephone: (248) 415-3206
Facsimile: (248) 746-4001

Brian J. Wanca
ANDERSON + WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
Telephone: (847) 368-1500
Facsimile: (847) 368-1501

Phillip A. Bock
David M. Oppenheim
BOCK, HATCH, LEWIS & OPPENHEIM, LLC
134 N. La Salle Street, Suite 1000
Chicago, IL 60602
Telephone: 312/658-5500

## CERTIFICATE OF E-FILING AND SERVICE

    I hereby certify that on !!!, I electronically filed the foregoing using the Court's CM/ECF System, which will send notification of such filing to all counsel of record.

s/ Phillip A. Bock
